**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

IN RE:
MAISON ROYALE, LLC                                              CASE NO. 23-10966
DEBTOR                                                          CHAPTER 7

**MEMORANDUM OPINION**

      This matter came before the court on April 15 and 19, 2024, on the Objection to Claim[1] of Jack Adams ("Mr. Adams") and Amended Objection[2] filed by the chapter 7 trustee, Wilbur J. Babin ("Trustee"), as well as the Joinder[3] filed by Rick M. Sutton ("Mr. Sutton").  Following post-trial briefs filed on May 29, 2024, the matter was taken under advisement.

**I.  Jurisdiction, Venue, and Core Status**

      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The matter constitutes a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (B). To the extent any of these issues are non-core in nature, the parties are deemed to have consented to this court rendering a final judgment.

**II.  Summary of Facts**

      On June 20, 2023, Maison Royale filed a voluntary petition under chapter 11, subchapter V of the Bankruptcy Code, and Mr. Adams signed the petition as "managing member."   On September 20, 2023, the case was converted to chapter 7.

---

[1] Objection to Claim, P-253.

[2] Amended Objection to Claim, P-269.

[3] Joinder, P-271.

This court has previously rendered opinions that included the background of this case, and as such, will only summarize here.[4]  The debtor, Maison Royale, LLC ("Debtor" or "Maison Royale"), operated a jewelry and fine arts store from 2012 through late 2016.  Mr. Sutton and Mr. Adams have been embroiled in litigation for roughly ten years surrounding the operations and wind down of the business.  Most of that litigation centers around ownership of Maison Royale and has been remanded to state court.  This court has granted relief from the automatic stay to allow it to proceed. This ruling does not impact that pending litigation but rather serves only to establish the amount and validity, if any, of Proof of Claim 4 filed by Mr. Adams.

Mr. Adams timely filed Proof of Claim 4 ("Mr. Adams' Claim"), claiming he is owed $1,699,190.04 from various loans he made to the Debtor over the course of several years.  The Trustee and Mr. Sutton object to the substantive amount of Mr. Adams' Claim and contend that the majority of Mr. Adams' Claim, even if characterized as loans, has prescribed.  Prior to trial, the court rendered partial summary judgment finding that Mr. Adams' Claim is governed by the three-year prescriptive period pursuant to La. Civil Code art. 3494 for "money lent" rather than the longer ten-year contract prescriptive period championed by Mr. Adams.[5]

At trial, the parties orally stipulated to reduce two items of Mr. Adams' Claim:[6]

|  | Original | Stipulation |
|---|---|---|
| Net Cash Out-of-Pocket Loss in November 2016 | $219,866.00 | $202,866.00 |
| Post-closure Expenses made on or before January 10, 2017 | $82,379.81 | $60,172.71 |

---

[4] This court previously rendered a written opinion on partial summary judgment on March 11, 2024 [P-314].  In addition, the court entered an oral ruling on September 28, 2023, denying dismissal and relief from stay and granting turnover.  On the same date, the court rendered oral rulings remanding adversary nos. 23-1017 and 23-1019 to state court, while denying remand of adversary no. 23-1020.

[5] Partial Judgment, P-315.

[6] Trial Transcript 04/19/24, P-370, pp. 43-44.

| | | |
|---|---|---|
| Loan for Registry Funds made on or before June 9, 2017 | $775,246.00 | $775,246.00 |
| Loans for Attorneys' Fees and Expenses[7] | $621,698.23 | $621,698.23 |
| Total | $1,699,190.04 | 1,659,982.94 |

## III.  BURDEN OF PROOF

### A.  Validity and Amount of Claim

F.R.B.P. 3001(f) provides, "A proof of claim executed and filed in accordance with [the Bankruptcy] rules shall constitute prima facie evidence of the validity and amount of the claim." In *Simmons v. Savell*,[8] the Fifth Circuit held that the party objecting to a properly filed proof of claim carries the burden of supporting its objection with "evidence tending to defeat the claim that is of a probative force equal to that of the creditor's proof of claim."[9]  In *Raleigh v. Illinois Dep't of Revenue*,[10] the United States Supreme Court held that the ultimate burden of proof lies with the party who would bear the burden of proof under substantive law.

The claim objections by the Trustee and Mr. Sutton sufficiently rebut the presumption of prima facie validity, so the burden of proof shifts to the party who would bear the burden under relevant substantive law.  Under substantive Louisiana law, "[t]he party demanding performance of an obligation bears the burden of proving [its] existence."[11]  Therefore, Mr. Adams, the party claiming a debt is owed to him, bears the burden of proof on the existence of the claim.

---

[7] Mr. Adams' addendum to his proof of claim provides that the $621,698.23 includes (1) $338,397.29 paid to Greenberg Traurig, P.A., (2) $243,355.79 paid to Phelps Dunbar LLP, (3) $14,945.15 paid to Barrasso Usdin Kupperman Freeman & Sarver, LLC, and (4) $25,000 retainer paid to Lugenbuhl, Wheaton, Peck, Rankin & Hubbard ("Lugenbuhl").

[8] *Simmons v. Savell (In re Simmons)*, 765 F.2d 547 (5th Cir. 1985).

[9] *Simmons*, 765 F.2d at 552.

[10] *Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15, 120 S. Ct. 1951, 147 L. Ed. 2d 13 (2000).

[11] *Ybarra v. Haymon*, 2023-748 (La. App. 3 Cir. 5/1/24), 2024 WL 1905038, at *2 (citing La. C.C. art. 1831).

### B. Prescription

In *Mitchell v. Baton Rouge Orthopedic Clinic, L.L.C.*,[12] the Louisiana Supreme Court

held:

> The burden of proving prescription ordinarily lies with the party raising the
> exception; however, when prescription is evident from the face of the petition, the
> burden shifts to the plaintiff to show the action has not prescribed.[13]

The party claiming interruption or suspension of prescription bears the burden of proving that

interruption or suspension occurred.[14]

## IV. MR. ADAMS' CLAIM

As mentioned previously, Mr. Adams' Claim, following certain stipulations admitted into

evidence at trial, now totals $1,659,982.94. Each aspect of Mr. Adams' Claim will be addressed

separately.

### A. Registry Funds deposited on June 9, 2017

When the Debtor liquidated its assets in November 2016, it reduced the amount claimed

owed Mr. Adams by $775,246 as follows:

1. the Debtor allowed Mr. Adams to take five pieces of jewelry for a credit of
   $103,380.08 on what it owed him;[15]
2. the Debtor allowed Mr. Adams to take fifteen paintings for a credit of $151,866.27;[16]
   and

---

[12] *Mitchell v. Baton Rouge Orthopedic Clinic, L.L.C.,* 2021-00061 (La. 10/10/21), 333 So. 3d 368.

[13] *Id.* at 374 (citing *Hogg v. Chevron USA, Inc*., 09-2632, p. 7 (La. 7/6/10), 45 So. 3d 991, 998; *In re Med. Rev. Panel of Gerard Lindquist*, 18-444 (La. App. 5 Cir. 5/23/19), 274 So. 3d 750, 754, *writ denied*, 2019-01034 (La. 10/1/19), 280 So. 3d 165).

[14] *Taranto v. Louisiana Citizens Prop. Ins. Corp.*, 2010-0105 (La. 3/15/11), 62 So. 3d 721, 726.

[15] Adams Exh. 12 and 57, P-335.

[16] Adams Exh. 13 and 57, P-335.

3.   the Debtor paid Mr. Adams $520,000 it received from the sale of assets.

On April 25, 2017, the Civil District Court for the Parish of Orleans ordered Mr. Adams to deposit $775,246, or the amount he received from the Debtor's liquidation, into the court registry.[17] Mr. Adams complied on June 9, 2017.[18] These funds are now held by the Trustee, and the parties do not contest that the funds represent property of the estate under 11 U.S.C. § 541.

Mr. Adams contends that he had no choice but to loan $775,246 to Maison Royale to satisfy the court order. The Trustee and Mr. Sutton object to this aspect of Mr. Adams' Claim on several grounds. First, the Trustee disputes the characterization of Mr. Adams' payment of the funds into the state court registry as a loan to Maison Royale and instead maintains that Mr. Adams merely returned liquidation proceeds that belonged to the company. In other words, the payment received by Mr. Adams was either a member distribution or an outright gift. However, no court has ruled that those proceeds originally paid to Mr. Adams were not due to Mr. Adams at the time of liquidation in November 2016.

Whether this compelled transaction constitutes a loan or a capital contribution, as the Trustee and Mr. Sutton contend, is a thorny question. Naturally, if the deposit of the funds was a capital contribution, Mr. Adams would not have an unsecured claim for $775,246 and the inquiry stops here. The court places no import whatsoever upon the lack of a promissory note or other debtor/creditor formalities. As Mr. Adams' expert at trial stated, such formality with insiders is

---

[17] Amended Judgment dated 04/25/17 in *Sutton v. Adams*, case no. 14-10709 c/w 15-4829, Adams Exh. 34, P-335.

[18] On June 8, 2017, Mr. Adams' counsel, Greenberg Traurig, P.A., wrote a check for $775,246 to the order of the "Clerk of Court Orleans Parish." Adams Exh. 15, P-335. The Clerk of Court for the Civil District Court for the Parish of Orleans issued a receipt of that amount on June 9, 2017. Adams, Exh. 16, P-335.

uncommon.[19]  Instead, as Mr. Sutton advocates, the court's analysis focuses on substance over form.

Mr. Sutton's objection to the claim may be fairly described as an attempt to recharacterize the claimed debt as equity.  His motivation is hardly veiled, as a successful recharacterization would breathe life into his claims pending in state court that he has a membership interest and, more importantly, that his potential interest has value. Recharacterization is a distinct remedy that can requested by a party in interest in an adversary complaint[20] or simply as part of an objection to a claim. This remedy can be requested in cases where the transaction underlying a claim would be properly classified as an equity contribution, as opposed to a debt, under applicable state law.

This approach to recharacterization is specific to the Fifth Circuit and is based on *In re Lothian Oil Inc.*[21] A bankruptcy court's ability to recharacterize a debt stems from its authority to allow or disallow claims under 11 U.S.C. § 502(b), which states in relevant part that the court "shall allow such claim in such amount, except to the extent that-- (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable

---

[19] Deposition of Harold A. Asher dated 04/10/24, Adams Exh. 71, p. 29, P-376.

[20] "Although … recharacterization claims usually are made in the context of a formal adversary proceeding, an adversary proceeding is not required because recharacterization of debt does not fall under one of the ten exclusive categories identified in Bankruptcy Rule 7001 that requires an adversary proceeding." *In re Live Primary, LLC*, 626 B.R. 171, 197 (Bankr. S.D.N.Y. 2021) (citations omitted).

[21] *In re Lothian Oil Inc.*, 650 F.3d 539 (5th Cir. 2011).

law…" The Supreme Court ruled in *Butner*[22] that the "applicable law" referenced in § 502 is state law.[23] Accordingly, the *Lothian Oil* court concluded:

> Taken together, *Butner* and § 502(b) support the bankruptcy courts' authority to recharacterize claims. If a claim asserts a debt that is contrary to state law, the bankruptcy court may not allow the claim. Moreover, where the reason for such disallowance is that state law classifies the interest as equity rather than debt, then implementing state law as envisioned in *Butner* requires different treatment than simply disallowing the claim.[24]

In *Lothian Oil*, the court analyzed the challenged claims under Texas law, noting that Texas courts employ tests borrowed from federal tax law to distinguish between debt and equity.[25] After applying those tests, the Fifth Circuit reversed the lower court's ruling and held that the claims in question should be recharacterized as equity under applicable Texas law.[26]

In this case, Mr. Sutton has failed to point to a single provision of Louisiana law that would support recharacterization.    Instead, he relies on inapplicable factors used by the Sixth Circuit in *Ross Steel Tube Co. v. Commissioner*,[27] which are similar to those used under Texas law, in an effort to bootstrap federal tax cases that have decided whether a transaction is a loan or a capital contribution.[28]

_____

[22] *Butner v. United States*, 440 U.S. 48, 54, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979).

[23] *Butner*, 440 U.S. at 54, 99 S.Ct. at 918.

[24] *Lothian Oil*, 650 F.3d at 543.

[25] *Id*. at 544.

[26] *Id*.

[27] *Roth Steel Tube Co. v. Comm'r*, 800 F.2d 625 (6th Cir. 1986).

[28] Mr. Sutton's Post-trial Memorandum, P-379, p. 4.

Following *Lothian Oil,* this court must begin its analysis with Louisiana law.  La. R.S. 12:1301(A)(3) defines "capital contribution" as applied to limited liability companies; it provides:

> "Capital contribution" means anything of value that a person contributes to the limited liability company as a prerequisite for, or in connection with, membership, including cash, property, services rendered, or a promissory note or other binding obligation to contribute cash or property or to perform services.

Unfortunately, no case law sheds any helpful light on the definition.  But a plain reading of it leads to the inescapable conclusion that it would be a reach to conclude that a court order compelling return of funds paid to reduce the company's debt, consistent with the company's books and records, is tantamount to a prerequisite for, or in connection with, membership. Indeed, Mr. Adams testified, as did both experts in forensic accounting, that the contemporaneous books of the Debtor showed capital contributions and loans separately.[29] Stated another way, the testimony at trial and evidence adduced, including tax returns and the contemporaneous books and records of Maison Royale, make it more likely than not that Maison Royale owed Mr. Adams significantly more than $775,246 at the time of the paydown to him following the inventory liquidation.  Therefore, it is unquestionable, in this court's view, that Mr. Adams was owed significantly more than $775,246 <u>after </u>he complied with the court order.  This court finds that the deposit of funds into the court registry was not made "as a prerequisite for, or

---

[29] Mr. Adams testified that the capital contributions he made for the build out of the shop are not included in Mr. Adams' Claim. Trial Transcript 04/15/24, P-369, pp. 52, 64, 66.  Mr. Asher, an expert in forensic accounting, testified that the amounts in Mr. Adams' Claim were contemporaneously recorded in the Debtor's books as loans. Adams Exh. 71, P-375, p. 18-19, 38, 79. Mr. Tizzard, Mr. Sutton's expert, agreed that the Debtor's books reflected these amounts.  Trial Transcript 04/15/24, P-369, pp. 207-08, 211-12, 252-253, 272-273, 277-279, 282. Mr. Adams' tax returns are Adams Exh. 64-67.

in connection with, membership" as required under Louisiana law. It was made to comply with a court order.

After *Lothian Oil,* two Louisiana bankruptcy cases have weighed in on this issue.  First, in *In re Gulf Fleet Holdings, Inc.,*[30] the court relied on *Lothian Oil* correctly for the proposition that the trustee would have to cite to a particular Louisiana law to recharacterize debt to equity. The trustee relied on Louisiana's laws on simulation under La. C.C. art. 2025-2027, which the court accepted as a potential means for recharacterizing debt.  Ultimately the bankruptcy court rejected the trustee's position on the merits.  Second, this court refuses to follow *In re 800 Bourbon Street, LLC.*[31]   In that case, the bankruptcy court stated that the proper way to determine whether a transaction should be classified as debt or equity is to apply the tax law test from *Estate of Mixon.*[32]   That decision ignores the Fifth Circuit's later *Lothian Oil* ruling that calls for applicable state law to determine the question.

In this case, simulation has not been urged and does not seem to be an option for the Trustee and Mr. Sutton.  The Louisiana revocatory action (La. C.C. art. 2036, *et.seq.*) might have formed the basis of such a claim, but the time to bring that action has long since expired based on the action's three-year peremptive period.[33]

It is worth noting that had this bankruptcy been filed much earlier, the Trustee would have had a solid preferential transfer avoidance action against Mr. Adams as an insider under 11

---

[30] *In re Gulf Fleet Holdings, Inc.*, 491 B.R. 747 (Bankr. W.D. La. 2013),

[31] *In re 800 Bourbon Street, LLC*, 557 B.R. 489 (Bankr. E.D. La. 2016).

[32] *Estate of Mixon*, 464 F.2d 394, 402 (5th Cir. 1972).

[33] La. C.C. art. 2041.

U.S.C. § 547(b).[34] The Trustee's position would be that Mr. Adams received that payment (*i.e.*, the combination of credits and cash following the inventory liquidation) from an insolvent debtor, and that payment allowed him to recover more than he would have recovered had the transfer not been made and an orderly liquidation followed under chapter 7 of the Bankruptcy Code. A judgment avoiding the transfer and authorizing recovery against Mr. Adams under 11 U.S.C. §§ 547 and 550 would mirror exactly what the state court did in this case by ordering Mr. Adams to place the funds in the registry of the court.

So, if this were a successful avoidance action by the Trustee, it is undeniable that satisfaction of that judgment (*i.e.*, paying the money back as Mr. Adams did) would give rise to an unsecured claim in favor of Mr. Adams under 11 U.S.C. § 502(d). That subsection provides in relevant part, "…, the court shall disallow any claim …that is a transferee of a transfer avoidable under section … 547, … of this title, **unless such … transferee has paid the amount**, … for which such … transferee is liable under section …550, … of this title."[35] In other words, the defendant in a preference action does not have a claim at all unless the adverse judgment is paid. Once paid, however, that defendant has rights as an unsecured creditor.

Of course, this is not an avoidance action, but the mechanics are identical and so should the equitable result be. The only substantive difference here is the Trustee already has the recovery in hand, despite being time barred on seeking avoidance of the initial payments to Mr. Adams following liquidation of the inventory. Yet the Trustee is trying to deprive Mr. Adams of

---

[34] A preference claim against an insider has a one-year lookback period. 11 U.S.C. § 547(b)(4)(B).

[35] 11 U.S.C. § 502(d) (emphasis added).

his pro rata share as an unsecured creditor that he would have been entitled to had the preference action been available to him.

Alternatively, the Trustee contends Mr. Adams is judicially estopped from characterizing the deposit as a loan from Mr. Adams to the Debtor because Mr. Adams, as Debtor's managing member, listed the funds as an asset in the Debtor's bankruptcy schedules, more specifically identified as inventory liquidation proceeds. [36]  The argument is unpersuasive.  Loan proceeds are always assets of a borrower, subject, of course, to the security interest or claim of the lender. Even though the cash was being held by the Clerk of Court (and now the Trustee) rather than in the Debtor's bank account, the cash was and always has remained an asset of the Debtor.  The bankruptcy schedules confirm that reality.  Indeed, the only party that would benefit from a different ruling (*i.e.*, that the money was Mr. Adams' property rather than Maison Royale's) is Mr. Adams, and to the extent he could have claimed otherwise, he has long since waived that argument.

Accordingly, the fact that the money was described in the schedules as inventory liquidation proceeds does not preclude Mr. Adams from asserting his claim as a lender. Mr. Adams was ordered to deposit the $775,246 liquidation proceeds he received from the Debtor by the state court, essentially reversing the Debtor's payment of amounts it believed were owed to Mr. Adams when the business closed.

Neither the Trustee nor Mr. Sutton could point to a case where a court-ordered return of funds constituted a capital contribution.  The court holds that Mr. Adams made a forced loan to

---

[36] Schedule A/B, Trustee Exh. 10, P-334.

Maison Royale on June 9, 2017.  Based on this court's partial summary judgment ruling, that claim for "money lent" would have prescribed in June of 2020, unless the time to act was interrupted and/or suspended.

Therefore, the court turns its attention to whether this $775,246 claim is still viable based on one or more Louisiana legal concepts of interruption of prescription, suspension of prescription, tacit acknowledgment of the debt, and/or the doctrine of *contra non valentem*.  At the outset, Louisiana prescription statutes are strictly construed against prescription and in favor of the obligation sought to be extinguished.[37]

La. Civ. Code art. 3464 provides that [p]rescription is interrupted when one acknowledges the right of the person against whom he had commenced to prescribe." Interruption of prescription must occur before the prescriptive period has expired.[38]

In *Bates v. City of Denham Springs*,[39] the court held that "[a]n acknowledgment may be oral, in writing, formal, informal, express or tacit. If the acknowledgement is tacit, it is necessary to ascertain that the alleged facts imply a definite admission of liability."[40]

Mr. Adams contends that Maison Royale "maintained 'continuous and frequent contact with [Mr. Adams] throughout the prescriptive period' and effectively 'lull[ed] Adams into believing [it

---

[37] *Nicklaus v. Bellina,* 96-2411 (La. App. 4 Cir. 5/21/97), 696 So.2d 120, *writ denied*, 97-2118 (La. 11/14/97), 703 So.2d 631 (citing *Doskey v. Hebert,* 93-1564 (La. App. 4 Cir. 9/29/94), 645 So.2d 674, 679).

[38] *Reynolds v. Walgreen Co.,* 2021-1049 (La. App. 1 Cir. 6/2/22), 342 So. 3d 975, 984, *writ denied,* 2022-01036 (La. 10/12/22), 348 So. 3d 79 (citing *Bracken v. Payne and Keller Co., Inc.,* 06-0865, p. 7 (La. App. 1st Cir. 9/5/07), 970 So. 2d 582, 588).

[39] *Bates v. City of Denham Springs*, 2022-0853 (La. App. 1 Cir. 4/18/23), 367 So. 3d 102.

[40] *Bates*, 367 So. 3d at 107.

would] not contest liability,' thereby tolling the applicable prescriptive period."[41]  In *Lima v. Schmidt*,[42] the Louisiana Supreme Court held:

> A tacit acknowledgment occurs when a debtor performs acts of reparation or indemnity, makes an unconditional offer or payment, or lulls the creditor into believing he will not contest liability. Conversely, mere settlement offers or conditional payments, humanitarian or charitable gestures, and recognition of disputed claims will not constitute acknowledgments. These generalizations are reflected in the host of cases addressing the issue of what constitutes a tacit acknowledgment. Our courts have added to the above generalizations other criteria that evidence an acknowledgment, including undisputed liability, repeated and open-ended reassurances of payment, and continuous and frequent contact with the creditor throughout the prescriptive period.[43]

A review of the cases cited and additional Louisiana jurisprudence shows that courts have found interruption of prescription by tacit acknowledgment in the following instances:  1) when an insurer pays part of a claim,[44] 2) continued and frequent contact with insurance company coupled with actions such as the insurance company hiring professionals,[45] 3) an email from an the insurer that the injury component of the claim would be settled after medical treatment was

---

[41] Mr. Adams' Pre-trial Memorandum, P-338, p. 4 (quoting *Lima v. Schmidt*, 595 So. 2d 624 (La. 1992), *overruled on other grounds, Jenkins v. Starns*, 2011-1170 (La. 1/24/12), 85 So. 3d 612).

[42] *Lima v. Schmidt*, 595 So. 2d 624 (La. 1992), *overruled on other grounds, Jenkins v. Starns*, 2011-1170 (La. 1/24/12), 85 So. 3d 612.

[43] *Id*. at 634.

[44] *Mallett v. McNeal*, 2005-2289 (La. 10/17/06), 939 So. 2d 1254; *Riehm v. State Farm Mut. Auto. Ins. Co.*, 07-651 (La. App. 5 Cir. 1/22/08), 977 So. 2d 1045, *writ denied*, 2008-0387 (La. 4/18/08), 978 So. 2d 350; *Young v. Gremillion*, 05-802 (La. App. 5 Cir. 3/14/06), 924 So. 2d 1285, *writ denied*, 2006-1066 (La. 12/15/06), 944 So. 2d 1270; *Robideau v. Johnson*, 30,422 (La. App. 2 Cir. 8/28/97), 702 So. 2d 313, *writ not considered*, 97-2669 (La. 11/21/97), 703 So. 2d 1297; *Sinegal v. Kennedy*, 2004-299 (La. App. 3 Cir. 9/29/04), 883 So. 2d 1079, *writ denied*, 2004-2688 (La. 1/7/05), 891 So. 2d 683.

[45] *Cutrell v. Liberty Mut. Fire Ins. Co.*, No. CIV.A. 03-2950, 2004 WL 193126 (E.D. La. Jan. 30, 2004).

complete,[46] 4) filing a claim with a medical review panel interrupted prescription on suit for medical battery when the doctor failed to object to that procedure,[47] and 5) continued notation of compensatory time on paystubs interrupted prescription on suit over right to payment for that time.[48] The common thread in these cases is conduct by the party from whom payment is sought that led the creditor to believe the party would not contest payment, thus lulling the creditor into not filing suit during the prescriptive period.

A precise timeline of actions and inactions is necessary here.  Easily within three years of the court-ordered deposit of the funds, specifically on October 11, 2019, Mr. Adams filed a motion seeking release of the funds and served all counsel of record.[49]  The motion was filed after the state district court vacated its original order requiring the funds be deposited.[50] Crucial to this court's ruling now, Maison Royale was a party to that litigation and received notice that Mr. Adams filed a pleading seeking to recover the funds.[51]

---

[46] *Haydel v. PFT Roberson, Inc.*, No. CV 6:03-1686, 2005 WL 8178064 (W.D. La. Feb. 4, 2005).

[47] *Niklaus v. Bellina*, 96-2411 (La. App. 4 Cir. 5/21/97), 696 So. 2d 120, *writ denied*, 97-2118 (La. 11/14/97), 703 So. 2d 631.

[48] *Knecht v. Bd. of Trustees for Colleges & Universities*, 525 So. 2d 250 (La. App. 1 Cir.), *writ denied*, 530 So. 2d 87 (La. 1988).

[49] Motion to Release Funds dated 10/11/19 in in *Sutton v. Adams*, case no. 14-10709, Civil District Court, Parish of Orleans, Adams Exh. 42, P-335.

[50] *See* Reasons for Judgment dated 01/30/20 in *Sutton v. Adams*, case no. 14-10709 c/w 15-4829, Adams Exh. 44, P-335.

[51] Motion to Release Funds dated 10/11/19 in in *Sutton v. Adams*, case no. 14-10709, Civil District Court, Parish of Orleans, Adams Exh. 42, P-335.

In *Montiville v. City of Westwego*,[52] the Louisiana Supreme Court held that "[n]otice to a defendant of legal proceedings on a claim interrupts prescription."[53] Therefore, the court finds that prescription was interrupted in October of 2019, less than three years from the date Mr. Adams deposited the funds on June 9, 2017.  The effect of interruption of prescription, whether by filing a legal proceeding or by acknowledgement, is contained in La. Civil Code art. 3466; it provides, "If prescription is interrupted, the time that has run is not counted. Prescription commences to run anew from the last day of interruption."  At this point in the saga, Mr. Adams still had at least three years from October 11, 2019, within which to take further action to collect this debt.

Even if filing the motion did not interrupt prescription, Maison Royale's conduct in response to the motion within three years of the deposit of the funds did.  The Debtor's decision not to challenge the motion at any time during the three and one-half months before the state court granted release of the funds on January 30, 2020[54] is viewed by this court as a textbook example of tacit acknowledgment. Had Maison Royale disagreed with Mr. Adams' formal legal action, it could have filed an objection claiming that Mr. Adams was not owed the money at any time prior to the January 30, 2020, ruling.

---

[52] *Montiville v. City of Westwego*, 592 So. 2d 390 (La. 1992).

[53] *Id*. (citing *Parker v. Southern American Insurance Co.,* 590 So.2d 55 (La.1991); *Nini v. Sanford Brothers, Inc.,* 276 So.2d 262 (La.1973)).

[54] Reasons for Judgment dated 01/30/20 in *Sutton v. Adams*, case no. 14-10709 c/w 15-4829, Civil District Court, Parish of Orleans, Adams Exh. 44, P-335.

A similar ruling was made in *Niklaus v. Bellina*,[55] where a doctor's failure to challenge a medical review panel's authority to proceed was deemed to be his tacit acknowledgment sufficient to interrupt prescription.

Here, Maison Royale was a party to the litigation. Its acquiescence or lack of action in response to the filing seeking to release the funds from the registry, after notice provided, interrupted prescription through its tacit acknowledgment.  In other words, Mr. Adams was lulled into believing that Maison Royale would not contest his right to payment of those funds.

But as is typical for this case, that is not the end of the story.  Mr. Adams still had to convince this court that his claim did not become time barred after January 30, 2023, or three years from the entry of the order releasing the funds.  In a bit of irony, before he could obtain the funds, the Louisiana Fourth Circuit Court of Appeal ("Fourth Circuit") stayed the case on February 12, 2020,[56] effectively preventing Mr. Adams from recovering the $775,246 but also serving to suspend prescription pursuant to the doctrine of *contra non valentem*.  In *Jenkins v. Starns*,[57] the Louisiana Supreme Court discussed the doctrine, finding:

> To soften the occasional harshness of prescription statutes, Louisiana courts have recognized a jurisprudential exception to prescription with *contra non valentem non currit praescriptio,* which means prescription does not run against a person who could not bring suit. *Carter v. Haygood,* 04–0646 at 11, 892 So.2d 1261, 1268 (citing *Harvey v. Dixie Graphics, Inc.,* 593 So.2d 351, 354 (La.1992); *Plaquemines Parish Comm'n Council v. Delta Development Co., Inc.,* 502 So.2d 1034, 1054 (La.1987)). The doctrine of *contra non valentem* is a Louisiana jurisprudential doctrine under which prescription may be suspended. *Carter,* 04–

---

[55] *Niklaus v. Bellina*, 96-2411 (La. App. 4 Cir. 5/21/97), 696 So. 2d 120, *writ denied*, 97-2118 (La. 11/14/97), 703 So. 2d 631.

[56] Order dated 02/12/20, case no. 2019-CA-0247, Court of Appeal, Fourth Circuit, State of Louisiana, staying the following cases that were pending in Civil District Court for the Parish of Orleans: 2014-10790, 2015-03495, 2016-11427, and 2017-03907; Adams Exh. 70, P-335.

[57] *Jenkins v. Starns*, 2011-1170 (La. 1/24/12), 85 So. 3d 612.

0646 at 11, 892 So.2d at 1268 (*citing* Frank L. Maraist and Thomas C. Galligan, Louisiana Tort Law § 10–4(b), 222 (1996)). …

This Court has recognized four instances where *contra non valentem* applies to prevent the running of prescription: (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action; (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting; (3) where the debtor himself has done some act effactually to prevent the creditor from availing himself of his cause of action; and (4) where the cause of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant. *Carter,* 04–0646 at 11–12, 892 So.2d at 1268.[58]

Mr. Adams argues prescription was suspended under the second prong set forth by the Louisiana Supreme Court. The Trustee and Mr. Sutton contend that nothing prevented Mr. Adams from filing a separate suit in state court against the Debtor to collect the $775,246. This court disagrees. First, as found above, Maison Royale lulled Mr. Adams into believing his right to collect the funds was unchallenged. At a very minimum, that gave Mr. Adams through January 30, 2023. Second, had Mr. Adams attempted to collect the funds through a separate legal action, he would have undoubtedly been accused by Mr. Sutton of violating the stay and very likely held in contempt by the Fourth Circuit. This court refuses to punish Mr. Adams for obeying a stay imposed by the Fourth Circuit.

The effect of suspension is different than interruption. La. Civil Code art. 3472 provides, "The period of suspension is not counted toward accrual of prescription. Prescription commences to run again upon the termination of the period of suspension." This court finds that prescription

---

[58] *Jenkins*, 85 So. 3d at 623. *See also Bienvenu v. Defendant 1*, 2023-01194 (La. 3/22/24), 382 So. 3d 38, *reh'g granted*, 2023-01194 (La. 5/10/24) ("Prescription is … subject to suspension under the doctrine of contra non valentem.")

was suspended by the Fourth Circuit's stay.  Now the court needs to delve into when the suspension lifted to determine if Mr. Adams' Claim is time barred.

While Maison Royale's tacit acknowledgment interrupted prescription through at least January of 2023, the Fourth Circuit's stay suspended the running of prescription through at least October 12, 2022.[59] When that suspension ended, Mr. Adams still had the remaining time left to pursue the matter, or 13 days shy of a full three years.  By this court's count, the suspension afforded Mr. Adams through the end of September of 2025, to act.  Ultimately the Louisiana Supreme Court granted Mr. Sutton's petition for writ of certiorari, vacated the lower courts' rulings, and remanded on March 7, 2023.[60]  Mr. Adams filed a motion for rehearing, which was denied on May 16, 2023.[61]  Even after the ruling by the Supreme Court, Maison Royale took no action to challenge Mr. Adams' claim to the deposited funds.  The bankruptcy was filed roughly one month later, and the Debtor's schedules confirm that Maison Royale believed Mr. Adams was a creditor.

The court finds that this $775,246 claim was for money lent, was still viable when the Fourth Circuit imposed its stay, and remained viable at all times leading up to the timely filing of Mr. Adams' Claim.  Mr. Adams acted within three years of depositing the money with the registry of the court; Maison Royale tacitly acknowledged the debt by failing to act in response to Mr. Adams' motion; and before the effects of interruption were exhausted, the Fourth Circuit

---

[59] *Sutton v. Adams*, 2019-0992 (La. App. 4 Cir. 10/12/22), 351 So. 3d 427.

[60] *Sutton v. Adams*, 2022-01672 (La. 3/7/23), 356 So. 3d 1038.

[61] *Adams v. Sutton*, 2022-01677 (La. 5/16/23), 360 So. 3d 481.

suspended prescription with its stay.  Moreover, the Trustee and Mr. Sutton failed to show any

action or inaction by Maison Royale, before or after the bankruptcy, that tended to raise question

about Maison Royale's acknowledgment of the debt.  For these reasons, the court rules that Mr.

Adams has proved by a preponderance of the evidence that he has an allowed unsecured claim of

$775,246.

### B.  Net Cash Out-of-Pocket Loss in November 2016

Mr. Adams also claims he is owed $202,866 for what he describes as his net cash out-of-

pocket loss.  Simply stated, this is the claim for what allegedly remained owed to him after he

received a combination of cash and credits totaling $775,246 in November of 2016.  At that time,

Mr. Adams contends that the Debtor owed him for items he allowed the Debtor to sell on

consignment and other loans.    Mr. Adams testified that he gave the Debtor full credit for the

cost of the items.[62]  Dennis J. Tizzard, Mr. Suttons' expert witness in forensic accounting, agreed

that the Debtor's QuickBooks records substantiated that Maison Royale owed Mr. Adams

$202,866 after liquidation.[63]  Despite the Debtor's records, Mr. Sutton and the Trustee contend

that Mr. Adams could not prove that he was owed $202,866 following the liquidation.

Specifically, Mr. Tizzard opined that Mr. Adams failed to provide backup proof of the original

cost of the items.[64]  As such, the only evidence of the remaining debt amount was the Debtor's

---

[62] Mr. Adams testified that he gave full credit of what the Debtor paid for the jewelry against what was owed to him.
Trial Transcript 04/15/24, P-369, p. 112.  Mr. Adams testified that he gave full credit of what the Debtor paid for the
paintings against what was owed to him.  Trial Transcript, 04/15/24, P-369, p. 116.

[63] Trial Transcript, 04/15/24, P-369, pp. 207-08, 211-12, 282.

[64] Trial Transcript, 04/15/24, P-369, p. 247.

books and records and Mr. Adams' testimony. This court acknowledges that this aspect of Mr. Adams' Claim is far from bullet proof. But forced to make a call, the court finds that the claim of $202,866 was valid as of the dates of the inventory liquidation/payment to Mr. Adams in late 2016.

But these net out-of-pocket losses remaining after liquidation in November 2016, must still overcome the objections of prescription for failing to act within the three-year prescriptive period applicable in this case pursuant to La. Civil Code art. 3494.[65] Mr. Adams counters rather vaguely that prescription was interrupted. As the party asserting interruption of prescription, Mr. Adams bears the burden of proving that interruption occurred.[66]

Mr. Adams contends that during the lengthy litigation brought by Mr. Sutton since that time, he, as the Debtor's managing member, acknowledged the debts owed to him. Although it is undisputed that Mr. Adams has acted as the Debtor's managing member throughout the litigation, that alone does not establish acknowledgment of this debt claimed by Mr. Adams. The cases show that more than just continuous and frequent contact is needed for tacit acknowledgment; there must be some conduct that led Mr. Adams to believe the Debtor would not contest his claim. Unlike the registry funds, where Maison Royale received notice as a party and failed to object to the relief sought by Mr. Adams, Mr. Adams could point to no act or failure to act by Maison Royale after the Debtor's liquidation in November 2016, tending to show it

---

[65] Partial Judgment, P-315.

[66] *Taranto v. Louisiana Citizens Prop. Ins. Corp.,* 2010-0105 (La. 3/15/11), 62 So. 3d 721, 726.

acknowledged this debt or that Maison Royale "lulled" him into not filing suit on his net out-of-pocket losses.  And no court imposed a stay to prevent collection of these amounts.  Certainly by the time the bankruptcy was filed in 2023, it was far too late for the bankruptcy schedules' acknowledgment of the debt to interrupt prescription.

The court finds that Mr. Adams has not met his burden of proving that prescription on his claim for net out-of-pocket losses was interrupted or suspended. Therefore, this aspect of Mr. Adams' Claim was time barred in late 2019, and the claim is therefore disallowed.

**C. Post-Closure Expenses**

Mr. Adams also claims the Debtor owes him $60,172.71 for the following expenses he paid for the Debtor after it closed: [67]

| | | | | |
|---|---|---|---|---|
| 02/01/17 | $8,500.00 | Antoine's Prop. No. 1 | Check# 331 | February Rent |
| 03/01/17 | $8,500.00 | Antoine's Prop. No. 1 | Check# 333 | March Rent |
| 03/10/17 | $1,002.95 | Entergy | Amex | Entergy |
| 03/10/17 | $165.37 | Entergy | Amex | Entergy |
| 04/01/17 | $27,762.76 | Antoine's Prop. No. 1 | Check# 334 | April Rent/taxes |
| 05/03/17 | $10,675.34 | Antoine's Prop. No. 1 | Check# 337 | May Rent/taxes |
| 05/03/17 | $835.90 | ATT | Amex | confirm 1N08MQGG |
| 05/03/17 | $297.60 | Sewerage & Water | MasterCard | confirm 685997 |
| 05/03/17 | $2,000.00 | Where Magazine | Check# 339 | Inv NH672838 |
| 07/10/17 | $163.40 | Entergy | Amex | |
| 07/10/17 | $103.04 | Sewerage & Water | MC | 564215 |

---

[67] Adams Exh. 9, P-335.

The Trustee contends the $55,438.10 in rent payments were not paid on the Debtor's behalf.  Testimony established that the Debtor was not a party to the lease of the premises it occupied. [68]  The lease was between RJANO Holdings, Inc. ("RJANO"), as tenant, and Antoine's Property No. 1, LLC ("Antoine's), as landlord, and no evidence was introduced or testimony heard indicating the existence of a contract between the Debtor and RJANO, requiring the Debtor to make payments to Antoine's.[69]  Therefore, Mr. Adams has failed to carry his burden that the $55,438.10 in rental payments benefitted the Debtor, and thus, this portion of Mr. Adams' Claim is reduced to $4,734.61.

Since the $4,734.61 in payments was made in 2016, the remaining claim is prescribed on its face pursuant to La. Civil Code art. 3494. Mr. Adams contends, as he did with his claim for net out-of-pocket losses, that the Debtor tacitly acknowledged the debt because he was "lulled" into believing his claim would not be contested.  For the same reasons set forth above, Mr. Adams has cited to no particular action or inaction by Maison Royale that supports his argument. The remaining $4,734.61 is disallowed on prescription grounds.

### D.  Attorneys' Fees and Expenses

Finally, Mr. Adams seeks reimbursement of $621,698.23 he contends he paid on the Debtor's behalf for its representation in the dizzying array of litigation with Mr. Sutton in state court.  It is comprised of:

    1.  $338,397.29 paid to Greenberg Traurig, P.A. ("Greenberg"),

---

[68] Trial Transcript, 04/19/24, P-370, p. 46-47.

[69] Trial Transcript, 04/19/24, P-370, p. 46-47, 83-84.

2. $243,355.79 paid to Phelps Dunbar LLP ("Phelps"),

3. $14,945.15 paid to Barrasso, Usdin, Kupperman, Freeman & Sarver, LLC ("Barrasso"), and

4. $25,000 paid to Lugenbuhl, Wheaton, Peck, Rankin & Hubbard ("Lugenbuhl").[70]

The Trustee and Mr. Sutton object to the amounts allegedly paid to Greenburg and Phelps on grounds that Mr. Adams has not proven with specificity which portion of the overall attorneys' fees paid to those firms was for services rendered on the Debtor's behalf. They also contend that the claim, at least insofar as it relates to Greenburg and Phelps, is prescribed. The fees for each firm will be addressed separately.

### 1. Greenberg's Fees

At trial, Mr. Adams testified Greenberg represented not only the Debtor, but also Mr. Adams, his father, and an affiliate, Polly Point.[71] Greenberg separated the bills by case number, but not by client, and Mr. Adams received and paid all of these bills.[72] Mr. Adams also testified that later Greenberg went back through the bills and allocated a portion to the Debtor.[73] However, no one from Greenburg testified concerning allocation or value, and Mr. Adams could

---

[70] The amounts are taken from Mr. Adams' Claim. Trustee Exh. 1. At trial, Mr. Adams could not recall the exact amounts he paid to Greenberg and Phelps for the Debtor. He testified that he paid $323,000 to Greenberg for the Debtor, and $242,000 to Phelps. Trial Transcript, 04/15/24, P-369, pp. 161, 167. The exact amounts paid to Barrasso and Lugenbuhl are in evidence. Adams Exh. 5 and 6, P-335.

[71] Trial Transcript, 04/19/24, P-370, p. 91.

[72] *Id*.

[73] Trial Transcript, 04/19/24, P-370, p. 92.

not recall how Greenberg made the allocation.[74]   As addressed earlier, Mr. Adams, the party claiming a debt is owed to him, bears the burden of proof.   The court finds that he has failed to prove which portion of the fees he paid to Greenberg was for the benefit of the Debtor.[75]   While this court acknowledges that Maison Royale must have received some benefit from Greenburg's representation, it would be inappropriate now to randomly assign some value.   The claim is disallowed in its entirety.

## 2. Phelps' Fees

Similarly, Mr. Adams testified that Phelps represented the Debtor, Mr. Adams, Polly Point, and RJANO, though not all four in every case.[76]   Phelps sent a lump sum bill without making an allocation by client, so Mr. Adams testified that he allocated it by dividing the bill by the number of clients represented.[77]   To his credit, Mr. Adams admitted that he had no idea how much of the legal expense was actually for the benefit of the Debtor.   With no testimony from Phelps, Mr. Adams' arbitrary allocation after the fact is not sufficient to carry his burden regarding the amount of the fees that were paid by him for representation of the Debtor.[78]   The claim is disallowed in its entirety.

---

[74] Trial Transcript, 04/19/24, P-370, p. 93.

[75] Because Mr. Adams failed to prove his claim for fees paid to Greenberg, it is unnecessary to reach the issue of prescription.  However, the court notes that at trial, the Trustee and Mr. Adams stipulated that Mr. Adams made $9,213 of the payments to Greenberg within three years of the Debtor's bankruptcy filing. Trial Transcript, 04/19/24, P-370, p. 88.  Regardless, Mr. Adams failed to carry his burden of proof as to which portion of the $9,213 was for the benefit of the Debtor.

[76] Trial Transcript, 04/19/24, P-370, p. 93-94.

[77] Trial Transcript, 04/19/24, P-370, p. 97.

[78] Because Mr. Adams failed to prove his claim for fees paid to Phelps, it is unnecessary to reach the issue of prescription.  However, the court notes that at trial, the Trustee and Mr. Adams stipulated that Mr. Adams made $13,991.56 of the payments to Phelps within three years of the Debtor's bankruptcy filing. Trial Transcript,

### 3. Barrasso's Fees

On January 23, 2023, the Debtor engaged Barrasso to represent it in the state court litigation.[79]  Barrasso only represented the Debtor and did not represent Mr. Adams, thus eliminating the difficult question of allocation of benefits.  Mr. Adams paid a total of $14,945.15 to Barrasso on the Debtor's behalf.[80]  This amount was clearly paid within three years of the bankruptcy.   The Trustee stated in his post-trial brief that he does not object to Mr. Adams having an allowed claim for the $14,945.15 paid to Barrasso.[81]  The court finds that Mr. Adams proved that the fees paid to Barrasso were for the benefit of the Debtor and were made well within the three-year prescriptive period.  This aspect of Mr. Adams' Claim was preserved by the timely filing of Mr. Adams' Claim and is therefore allowed.

### 4. Lugenbuhl's Retainer

On June 12, 2023, the Debtor engaged Lugenbuhl as its bankruptcy counsel.[82]  Lugenbuhl only represented the Debtor, and Mr. Adams paid Lugenbuhl a $25,000 retainer on the Debtor's behalf.  This amount was paid well within three years, so this portion of the Mr. Adams' Claim is clearly not prescribed.  The Trustee does not object to Mr. Adams' Claim for

---

04/19/24, P-370, p. 88.  Regardless, Mr. Adams failed to carry his burden of proof as to which portion of the $13,991.56 was for the benefit of the Debtor.

[79] Barrasso Engagement Letter, Adams Exh. 5, P-335.

[80] *Id.*

[81] Trustee's Post-trial Memorandum, P-378, p. 13.

[82] Lugenbuhl Engagement Letter, Adams Exh. 7, P-335.

the $25,000 paid to Lugenbuhl.[83]  The court finds that Mr. Adams has proven his substantive

claim for advancing the Lugenbuhl retainer.  This portion of Mr. Adams' Claim was preserved by

the timely filing of Mr. Adams' Claim and is therefore allowed.

## V. Conclusion

The objections of the Trustee and Mr. Sutton to Mr. Adams' Claim are sustained in part

and overruled in part. The objections related to the $202,866 for net out-of-pocket losses are

sustained because Mr. Adams failed to prove interruption of prescription sufficient to render the

claim still viable on the date the bankruptcy was filed.  With respect to the claim of $60,172.71

for post-closing expenses, Mr. Adams failed to prove that $55,438.10 of the claim was for the

benefit of the Debtor.  Mr. Adams also failed to prove that the remaining claim has not

prescribed.

The objections are also sustained as to the claim for paying Greenberg's fees of

$338,397.29 and Phelps' fees of $243,355.79 because Mr. Adams failed to prove which portion

of the overall fees paid were for the benefit of the Debtor.  Accordingly, in the aggregate,

$844,791.79 of Mr. Adams' Claim is disallowed.

Conversely, the Trustee's and Mr. Sutton's objections are overruled as to the $775,246

deposited in the state court registry, the $14,945.15 paid to Barrasso, and the $25,000 paid to

Lugenbuhl.  Mr. Adams' Claim is allowed as an unsecured claim in this bankruptcy in the

---

[83] Trustee's Post-trial Memorandum, P-378, p. 13.

aggregate amount of $815,191.15.  The court will enter a separate order consistent with this

Memorandum Opinion.

Baton Rouge, Louisiana, June 18, 2024.

**/s/ Michael A. Crawford**
MICHAEL A. CRAWFORD
UNITED STATES BANKRUPTCY JUDGE